```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                      *

YOUNG HEE KO, Ph.D.,                  *

      Plaintiff,                      *
v.                                        CIVIL NO.: WDQ-05-1475
                                      *
THE JOHNS HOPKINS
UNIVERSITY, et al.,                   *

      Defendants.                     *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION AND ORDER

Young Hee Ko, Ph.D. ("Ko") sued Defendants The Johns Hopkins University ("Hopkins"), Chi Van Dang, M.D., Ph.D. ("Dang"), Jean-Francoise Henri Geschwind, M.D. ("Geschwind"), Jonathan Stuart Lewin, M.D. ("Lewin"), and Robert Winn Gayler, M.D. ("Gayler") for discrimination and retaliation in violation of Title VII of the Civil Rights Act[1] and Section 1981 of Title 42 of the United States Code[2]. Ko has also brought various tort and breach of contract claims. Pending are Defendants' motion to dismiss the Complaint and motion to strike the Complaint, and Plaintiff's motion to strike Defendants' Reply Memorandum. For the following reasons Defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion to strike the Complaint and Plaintiff's motion to strike will be denied.

---

[1] 42 U.S.C. §§ 2000e et seq. (2005).

[2] 42 U.S.C. § 1981 (2005).

I.  Background

In 1989, Ko applied for a Postdoctoral position in the Department of Biological Chemistry at the Johns Hopkins School of Medicine ("Hopkins SOM") with Peter L. Pedersen, Ph.D. ("Pedersen").  Compl. at ¶ 17.  Pedersen hired Ko in 1991.  *Id*. Ko worked for the Department of Biological Chemistry until June 30, 2002, when she began a three year appointment in the Department of Radiology as an Assistant Professor.  *Id*. at ¶ 26; Ex. 2-3.  The term of Ko's appointment in the Department of Radiology was from July 1, 2002 to June 30, 2005.  Ex. 5-6.

Dang is employed by Hopkins as a Professor of Medicine, Pathology, Oncology and Cell Biology with a joint appointment in Molecular Biology and Genetics at Hopkins SOM.  *Id*. at ¶ 13.  In 2000, Dang became the Vice Dean for Research at Hopkins SOM.  *Id*. One of Dang's many responsibilities is the assignment of laboratory space.  *Id*.

Geschwind is an Associate Professor of Radiology, Surgery and Oncology with an appointment as the Division Chief of Interventional Radiology.  *Id*. at ¶ 14.  Lewin is a Professor of Radiology and has been Chairman of the Radiology Department at Hopkins SOM since May 2004.  *Id*. at ¶ 15.  Gayler is an Associate Professor of Radiology at Hopkins SOM and served as the Interim Chairman of the Radiology Department from November 2002 to May 2004.  *Id*. at ¶ 16.

Through her research, Ko has developed an anti-cancer agent, 3-BrPA, which reportedly has a 100% cure rate for advanced cancer in laboratory rats ("rat survival study").  *Id*. at ¶¶ 20, 22-25, 34.  On August 19, 2003, Ko applied for a grant from The Susan G. Komen Breast Cancer Foundation ("Komen").  *Id*. at ¶ 38.  On the same date, Gayler signed a conditional space letter to be attached to the Hopkins SOM Information Sheet for Ko's Komen grant application.  *Id*.; Ex. 7.  The conditional space letter was addressed to the Hopkins SOM Office of Research Administration ("ORA").  *Id*.  The letter states in part, "The Department of Radiology and Radiological Sciences will provide Dr. Ko with an office space of 120 sq feet and a lab space of 600 square feet in the Broadway Research Building (currently under construction) if approved by Dr. Dang."  *See* Ex. 7.  The letter was not sent to Komen, but remained on file at ORA.  Compl. at ¶ 38.

On March 25, 2004, Ko was awarded the Komen grant.  *Id*. at ¶ 48.  On March 31, 2004, Dr. Linda Queen ("Queen"), Deputy Director of ORA sent Ko an e-mail inquiring about the space Gayler wrote about in the conditional space letter.  *Id*. at ¶ 49; Ex. 8.  In response to Queen's inquiry, Ko sent Lewin an e-mail on April 6, 2004 asking if she would receive the laboratory space to carry out cancer research consistent with the Komen grant. *Id*. at ¶ 50; Ex. 8.  Dang, Gayler, and Geschwind were carbon copied ("cc'd") on Ko's e-mail to Lewin.  *See* Ex. 8.

3

On April 7, 2004, Dang responded by e-mail (the "Dang e-mail")to Ko and Lewin, and cc'd Queen, Geschwind, Richard Grossi ("Grossi"), and Gayler.  *Id*. at ¶ 51; Ex. 8.  The Dang e-mail expressed concern over "what transpired when this grant was submitted" and that Dang had not been asked about office or laboratory space in the Broadway Research Building ("BRB") before the grant application was submitted to Komen.  The Dang e-mail also referenced Gayler's conditional space letter and stated, "I hope that this [sic] type of letters from Departments are more carefully scrutinized before they are sent out with grant applications.  We need to maintain some level of accountability and integrity with granting agencies."  *See* Ex. 8.

A series of e-mails was generated after the Dang e-mail, several authored by Ko, in which she defended her integrity, expected to receive office and laboratory space, and demanded an apology from Dang.  *See* Ex. 8.  The e-mails culminated in a letter of reprimand from Gayler to Ko dated April 15, 2004, in which Ko was informed that her e-mails to Dang and Gayler were unprofessional, that asking for an apology from Dang was inappropriate, and that Gayler was disappointed with Ko's conduct.  *See* Ex. 9.

On April 21, 2004, Ko e-mailed Geschwind, and complained about the "injustice inflicted on me by Chi Dang" and expressed her disappointment that Geschwind had not supported Ko in her

quest for office and laboratory space or throughout the e-mail exchanges. *See* Ex. 10.

On April 22, 2004, Gayler sent Ko a letter stating that her recent behavior was not consistent with expectations for Hopkins SOM Faculty. *See* Ex. 12. Ko was also informed that her continued faculty appointment was contingent upon evaluation by the Faculty and Staff Assistance Program ("FASAP"). *Id*. Ko was instructed to meet with FASAP within seven days of the letter and told that she "must follow any recommendations that FASAP may make. In addition, you must respond to this letter in 48 hours (April 26) or further steps will be taken by the Department." *Id*. Ko did not respond to Gayler's letter nor did she meet with FASAP. Compl. at ¶ 73.

On May 19, 2004, Ko filed a discrimination charge against Hopkins with the Baltimore Community Relations Commission ("BCCR") and the Equal Employment Opportunity Commission ("EEOC"), complaining of racial and gender discrimination. *Id*; Mot. Dismiss Ex. 1. On June 30, 2004, Hopkins notified Ko that her appointment as an Assistant Professor with the Department of Radiology wold not be renewed when the term expired on June 30, 2005.[3] *Id*. at ¶ 74; Ex. 13. On July 9, 2004, Ko filed a

_____

[3] Although Ko's appointment with the Department of Radiology was not renewed, Ko remains an employee of Hopkins, currently employed by Johns Hopkins University as an Assistant Professor in the Division of Interventional Radiology within the Radiology Department, with a secondary appointment as Assistant Professor

retaliation claim with the BCCR and EEOC.  *Id*. at ¶ 80; Mot.
Dismiss Ex. 2.  The EEOC issued right to sue letters for the
discrimination and retaliation complaints.  *See* Compl. Ex. 1.  Ko
filed this action on June 1, 2005.

Ko asserts: 1) discrimination and hostile work environment
on the basis of race and gender in violation of Title VII; 2)
discrimination and hostile work environment on the basis of race
in violation of section 1981; 3)retaliation and hostile work
environment in violation of Title VII; and 4) retaliation and
hostile work environment in violation of section 1981; 5) breach
of contract; 6) breach of fiduciary duty; 7) negligent
misrepresentation; 8) intentional fraud; 9) tortious interference
with a contractual relationship; 10) tortious interference with
prospective advantage; 11) defamation; 12) injurious falsehood -
disparagement; 13) invasion of privacy - false light; 14)
intentional infliction of emotional distress; 15) conspiracy; 16)
aiding and abetting; 17) unjust enrichment; and 18) quantum
meruit and seeks injunctive and compensatory relief.

II.  Analysis

A.  Defendants' Motion to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted
"only if it is clear that no relief could be granted under any

---

in the Department of Biological Chemistry.  Compl. at ¶ 11.

set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.


1.   Disparate Treatment under Title VII and Section 1981

Ko alleges discriminatory treatment by Defendants on the basis of her race and gender, which she alleges created an hostile work environment and caused Hopkins to terminate her employment.  To establish a prima facie case of disparate treatment under Title VII and Section 1981,[4] Ko must show: (1) she is a member of a protected class; (2) she suffered an adverse

---

[4] The elements of a prima facie case are identical under Title VII and Section 1981.  *Gairola v. Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

employment action; (3)while she was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).  This initial showing requires the plaintiff to produce "facts which would enable the fact-finder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of  racial [and gender] discrimination." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).

Leaving aside whether Hopkins' decision not to renew Ko's appointment was an adverse employment action, Ko has failed to allege that she was performing at a level that met Hopkins' expectations.  Ko received a letter of reprimand from Gayler on April 15, 2004 that stated that her conduct was disappointing and unprofessional.  The letter also stated that it is essential that the scientific community proceed with courtesy and civility.  *See University of Baltimore v. Iz*, 123 Md. App. 135, 161, 716 A.2d 1107, 1120 (1998)(collegiality is a legitimate consideration in promotion and tenure review process).  As Ko's complaint establishes that her conduct did not meet Hopkins' expectations, her allegations of discrimination will not withstand the motion to dismiss.

2.  Retaliation under Title VII and Section 1981

Ko alleges various acts of retaliation by Hopkins ranging from the lack of office and laboratory space to the non-renewal of her appointment after she filed her first EEOC charge.  To establish a claim of retaliation under Title VII and Section 1981, Ko must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; (3) because she engaged in protected activity. *Bryant v. Aiken Regional Medical Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003), *cert. denied*, 540 U.S. 1106 (2004).  The only protected activity that Ko has alleged is the filing of the EEOC discrimination charge on May 19, 2004.  *See Ellis v. Director, CIA*, No. 98-2481, 1999 U.S. App. Lexis 21638, at *14 (4th Cir. 1999).

As a result of the EEOC charge, Ko alleges that the non-renewal of her appointment was an adverse employment action.  There is conflicting case law whether the non-renewal of a term contract is the equivalent of dismissal or termination.  *Compare Mayberry v. Dees*, 663 F.2d 502, 515 (4th Cir. 1981)(non-renewal of a non-tenured faculty appointment following the running of an established probationary period is not dismissal) *with Balogun-Awosika v. University of Maryland Medical System Corporation*, No. JFM-01-1886, 2002 U.S. Dist. Lexis 26932, at *8 (D. Md. June 18, 2002)(non-renewal of residency contract an adverse employment action).  At this stage of the case, Ko has sufficiently alleged

that non-renewal is adverse employment action.

Temporal proximity is sufficient to establish the causal connection between the date when Ko filed the EEOC charge of discrimination and Hopkins' decision not to renew Ko's appointment with the Department of Radiology.[5]  *Id.* at *8; *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).  Ko has sufficiently alleged a retaliation claim.


3.  Breach of Employment Contract

Ko contends that Hopkins breached her appointment contract and the Gold Book[6] in various ways, including the failure to

---

[5] It is very possible that Hopkins had a legitimate reason for not renewing Ko's appointment, mainly because of Ko's conduct regarding the Komen grant and her quest for laboratory space. Courts have found collegiality to be a legitimate factor in considering promotion and continued employment. *University of Baltimore v. Iz*, 123 Md. App. 135, 161, 716 A.2d 1107, 1120 (Md. Ct. Spec. App. 1998).  Unsatisfactory performance by an employee is also a valid basis for an adverse employment action, such as the non-renewal of a contract.  *Balogun-Awosika*, 2002 U.S. Dist. Lexis 26932, at *9; *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991).  However, the Court cannot consider what may have been Hopkins' legitimate and non-discriminatory reasons for Ko's non-renewal, because Hopkins raised this argument for the first time in its reply motion.  *Baucom v. Potter*, 225 F. Supp. 2d 585, 590 n.3 (D. Md. 2002).

[6] The Policies and Guidelines Governing Appointments, Promotions, and Professional Activities of the Full-Time Faculty of the Johns Hopkins University School of Medicine (July 2001) is referred to as the "Gold Book."  *See* Foreword at pg. 1.

provide laboratory and office space, failure to provide annual reviews, failure to provide the opportunity to meet the criteria for promotion, and failure to provide 12 months notice of Ko's non-renewal.

Employment contracts are deemed at-will when the contracts do not specify a particular time or event terminating the employment relationship. *Shapiro v. Massengill*, 105 Md. App. 743, 754, 661 A.2d 202, 208 (Md. Ct. Spec. App. 1995). When an employment contract specifies a definite term, the contract may only be terminated prior to the end of the term for just cause. *Id*. Construction of a contract is a question of law for the court. *Id*. When the contract language is clear and unambiguous, the court must presume that the parties meant what is expressed in the contract. *Id*. Here, Ko's employment was governed by a contract that specified her appointment as an "Assistant Professor of Radiology Full Time" from July 1, 2002 to June 30, 2005. *See* Compl. Ex. 5. Ko was not an at-will employee, but had an express employment contract. *See* Compl. Ex. 5 ("this letter constitutes a contract between you and the School of Medicine.").

By signing the employment contract, Ko agreed to abide by the terms of the Gold Book and to adhere to the policies concerning "scientific integrity and the ethical conduct of research." The Gold Book states that the policies provide a "valuable framework for the important collegial relationship

11

between faculty members, their department directors, and the Dean."

Termination of a contract is justified for a material breach. *Hess Energy, Inc. v. Lightning Oil Co., Ltd.*, 276 F.3d 646, 649 (4th Cir. 2002). A breach is material if it goes to the "root of the contract" such that it "affects the purpose of the contract in an important or vital way." *Id.*; *Bollech v. Charles County*, 166 F. Supp. 2d 443, 548-459 (D. Md. 2001) (*quoting Shapiro v. Massengill*, 105 Md. App. 743, 757 (Md. Ct. Spec. App. 1995)); *Dialist Co. v. Pulford*, 42 Md. App. 173, 178, 399 A.2d 1374, 1379 (Md. Ct. Spec. App. 1979) (a material breach renders performance of the contract different than that contracted for by the parties).

Normally whether a breach is material is a question of fact; however, when the issue is so clear that only one decision properly may be given, the court may decide the matter as if it were a question of law. *Speed v. Bailey*, 153 Md. 655, 661-662, 139 A. 534, 537 (Md. 1927); *Milner Hotels, Inc. v. Norfolk & Western Railway Co.*, 822 F. Supp. 341, 345 (S.D.W.V. 1993), *aff'd*, 19 F.3d 1429 (4th Cir. 1994). To justify terminating the contract, the breach must be a complete failure to perform that defeats the object of the contract. *Speed*, 153 Md. at 660, 139 A. at 536.

The contract between Ko and Hopkins was for her employment as an Assistant Professor of Radiology for three years, during which Ko would abide by the policies and procedures at Hopkins while conducting research.  Ko has not pled a contractual breach because Ko's complaint acknowledges that she was given 12 months advance written notice that her appointment would not be renewed.  *See* Compl. Ex. 13.  Ko's contract did not create a reasonable expectation of continued employment beyond the contract term or any other property interest.  *Mayberry v. Dees*, 663 F.2d 502, 515 (4th Cir. 1981).  If anything, Ko's allegations and the e-mails incorporated into her complaint establish her lack of collegiality.  As Ko's allegations do not state a breach of the contract by Hopkins, her contract claim must fail.


4.  Breach of Fiduciary Duty

Ko alleges that the Defendants breached their fiduciary duties to Ko by, among other things, failing to conduct themselves in accordance with the Gold Book.  In every employment contract there is an implied duty of loyalty that runs from an employee to his employer.  *Quality Systems, Inc. v. Warman*, 132 F. Supp. 2d 349, 354 (D. Md. 2001).  Employers do not have a fiduciary duty to their employees when making employment decisions.  *Dzinglski v. Weirton Steel Corporation*, 875 F.2d 1075, 1080 (4th Cir. 1989).  Accordingly, Ko has not alleged that

Hopkins breached a fiduciary duty.


5.  Negligent Misrepresentation

    Ko argues that Hopkins breached its duty of care by
promising laboratory space that Ko did not receive.  The elements
of a claim of negligent misrepresentation are: (1) owing a duty
of care; (2) a negligently asserted false statement; (3) intent
that the statement will be acted upon; (4) knowledge that the
plaintiff will probably rely on the statement which, if
erroneous, will cause loss or injury; (5) the plaintiff's
justifiable action in reliance on the statement; and (6) damage
proximately caused by the defendant's negligence.  *Sun-Lite
Glazing Contractors, Inc. v. A. Berkowitz & Co., Inc.*, 37 Fed.
Appx. 677, 679 (4th Cir. 2002).  Under Maryland law, that duty
is independent of any contractual obligation.  *Id*. at 680.

    Ko has not alleged that Hopkins owed her any duty to provide
laboratory space independent of her employment contract.
Instead, Ko relies on the addendum to her offer letter dated
March 27, 2002, in which Dr. Zerhouni explained that Ko would
initially share space with Geschwind and then provided that if Ko
were employed after her three year contract, the department would
make every effort to supply her with 400 square fee of laboratory
space and an office.  *See* Compl. Ex. 3.  Ko alleges that when she

accepted Hopkins' offer on March 28, 2002 she "knew that had she been treated like any Caucasian and/or male basic scientist coming to the Johns Hopkins School of Medicine as an assistant professor, her offer would have included an office and sufficient laboratory space (at least 1000 square feet) consistent with the import of her research."  Compl. at ¶ 28.

A negligent misrepresentation claim also requires an affirmative representation.  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 549 (D. Md. 1997).  Absent an affirmative representation, a claim for negligent misrepresentation will not be upheld.  *Id.* at 549-550.  Ko cannot assert false statements or a lack of disclosure in the face of plain contractual language to the contrary.  *McDonald v. Friedman*, No. 02-2812, 2004 U.S. Dist. Lexis 27670, at *27-28 (D. Md. Feb. 4, 2004), *aff'd*, 128 Fed. Appx. 949 (4th Cir. 2005)(citing *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 60-63, 810 A.2d 1045 (2002), *cert. denied*, 373 Md. 407, 818 A.2d 1105 (2003); *Md. Environmental Trust v. Gaynor*, 370 Md. 89, 98-99, 803 A.2d 512 (2002); *Call Carl, Inc. v. B.P. Oil Corp.*, 554 F.2d 623, 630-631 (4th Cir. 1977)).

Ko was provided with space that she shared with Geschwind. Ko's appointment did not extend past the three year term, therefore, Hopkins was not required to provide Ko with any laboratory or office space.

15

6.  Intentional Fraud

Ko's allegation of intentional fraud is based on the same allegations as her negligent misrepresentation claim.  The elements of a claim of intentional fraud are: (1) a false representation; (2) its falsity was either known to the defendant or the representation was made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) plaintiff relied on the misrepresentation; and (5) plaintiff suffered injury resulting from the misrepresentation.  *Spincycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 590 (D. Md. 2002).  The difference between intentional fraud and negligent misrepresentation is the element of scienter, meaning that Hopkins intended to deceive Ko.  For the reasons stated above regarding the claim of negligent misrepresentation, Ko's allegation of intentional fraud also fails.


7.  Tortious Interference with a Contractual Relationship

Ko alleges that all of the Defendants interfered with her employment contract.  An action for tortious interference with a contract can only lie against a third party, because the appropriate cause of action against parties to a contract is a suit for breach of contract.  *Pope v. Board of School*

*Commissioners of Baltimore City*, 106 Md. App. 578, 591, 665 A.2d 713, 719 (Md. Ct. Spec. App. 1995).  Because Hopkins and Ko are parties to the contract, Hopkins and its employees are not liable for tortious interference with that contract.  *Id*.  Accordingly, Ko has not alleged a claim for tortious interference with a contractual relationship.

8.  Tortious Interference with Prospective Advantage

      Ko alleges that the Defendants interfered with her career advancement by not renewing her contract and the Defendants' conduct towards Ko throughout her appointment.  Unlike tortious interference with a contract, which requires the existence of a contract, tortious interference with prospective business advantage exists when there is no contract or a contract is terminable at will.  *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69, 485 A.2d 663, 674 (Md. 1984); *Kramer v. Mayor and City Council of Baltimore*, 124 Md. App. 616, 637, 723 A.2d 529, 539-540 (Md. Ct. Spec. App. 1999).  As stated above, Ko was not an at will employee, but had an employment contract for a specific term.  Accordingly, Ko has not alleged a claim for tortious interference with prospective business advantage.

17

9.  Defamation

Ko alleges that Hopkins and Dang defamed her by distributing the Dang e-mail to other Hopkins employees, and in subsequent e-mails exchanged between Dang and Ko.  Leaving aside whether the e-mails are defamatory, communications arising out of the employer-employee relationship enjoy a qualified privilege. *Darvish v. Gohari*, 130 Md. App. 265, 275, 745 A.2d 1134, 1139 (Md. Ct. Spec. App. 2000), *aff'd*, 363 Md. 42, 767 A.2d 321 (Md. 2001).  That privilege bars Ko's claim of defamation against Hopkins and Dang.


10.  Invasion of Privacy

Ko alleges two claims of invasion of privacy: false light and injurious falsehood/disparagement.  Both claims involve allegations that Hopkins and Dang accused Ko of misleading the Komen Foundation regarding available laboratory space and that Ko lacked integrity.  A claim for false light invasion of privacy may not stand unless the claim also meets the standards for defamation.  *Crowley v. Fox Broadcasting Co.*, 851 F. Supp. 700, 704 (D. Md. 1994).  Accordingly, Ko's claims of invasion of privacy also fail.

11.  Intentional Infliction of Emotional Distress

     Ko contends that the Defendants' conduct caused her extreme
emotional distress.  The elements of a claim for intentional
infliction of emotional distress are: (1) the conduct must be
intentional or reckless; (2) the conduct must be extreme and
outrageous; (3) a causal connection exists between the wrongful
conduct and the emotional distress; and (4) the emotional
distress must be severe.  *Gantt v. Security, USA, Inc.*, 356 F.3d
547, 552 (4th Cir. 2004).  There must be a showing that the
defendant knew or was substantially certain that severe emotional
distress wold result from the conduct, or acted recklessly in
deliberate disregard of a high degree of probability that
emotional distress would follow.  *Id*. at 553.  Ko has not alleged
sufficient facts to show that the Defendants' conduct was extreme
or outrageous.


12.  Conspiracy and Aiding and Abetting

     Ko contends that the Defendants conspired against her and
aided and abetted one another in their conduct against Ko.  Civil
conspiracy is not an independent cause of action, thus the claim
requires an underlying tort.  *Manikhi v. Mass Transit
Administration*, 360 Md. 333, 360, 758 A.2d 95, 110 n.6 (Md.
2000).  Similarly, civil aider and abetter liability requires the

existence of underlying tortious activity.  *Id*.  As Ko's tort
claims do not survive the motion to dismiss, her claims of
conspiracy and aiding and abetting also fail.


13.  Unjust Enrichment and Quantum Meruit

    Ko alleges claims of unjust enrichment and quantum meruit
against Hopkins regarding Ko's care for the laboratory animals.
Quasi-contract claims cannot be asserted when an express contract
defines the rights and remedies of the parties.  *County
Commissioners of Caroline County v. J. Roland Dashiell & Sons*,
358 Md. 83, 101, 747 A.2d 600, 610 (Md. 2000).  Ko argues that
her care of the laboratory animals was outside the scope of her
employment, thus her actions benefitted Hopkins.  However,
voluntary and gratuitous acts of an employee do not create an
independent cause of action outside of the contract.  *See
generally Crews v. Hollenbach*, 358 Md. 627, 649, 751 A.2d 481,
492 (Md. 2000).  Therefore, Ko's claims of unjust enrichment and
quantum meruit fail.


B.  Defendants' Motion to Strike

    As only Ko's retaliation claims have survived the motion to
dismiss, many of the allegations in the Complaint are moot.  It
is not necessary for the Court to strike sections of the

Complaint.  The motion to strike will be denied.


C.  Plaintiff's Motion to Strike

     As Defendants' motion to strike the Complaint has been
denied, Plaintiff's motion to strike the reply memorandum is
moot.  Plaintiff's concerns about issues raised for the first
time by the Defendants in the reply memorandum have been
addressed *supra* footnote 5.



                          CONCLUSION

     For the reasons discussed above, Defendants' motion to
dismiss will be granted in part and denied in part; Defendants'
motion to strike and Plaintiff's motion to strike will be denied.



January 4, 2006                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge




                              21